AMERICAN CAN COMPANY, Plaintiff,

v.

Ishwar MANSUKHANI, d/b/a Brand Associates, and Ruth Brand, d/b/a Brand Associates, and Brand M, Inc., Defendants.

Ishwar MANSUKHANI, Ruth Mansukhani a/k/a Ruth Brand, and Brand M, Inc., Plaintiffs,

v.

AMERICAN CAN COMPANY, and American Technologies, Inc., Defendants.

Nos. 81–C–1372, 84–C–454.

United States District Court, E.D. Wisconsin.

Aug. 15, 1985.

Andrew O. Riteris, Michael, Best & Friedrich, Milwaukee, Wis., for Mansukhanis.

Bruce O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, Wis., for American Technologies.

George H. Solveson, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., Douglas W. Wyatt, Thomas A. O'Rourke, Wyatt, Gerber, Shoup, Scobey & Badie, and Robert J. Woolsey, Griggs, Baldwin & Baldwin, New York City, for American Can.

## DECISION AND ORDER

WARREN, District Judge.

Two matters remain unresolved in Case Number 81-C-1372. First, the plaintiff has filed what is entitled a "Renewed Motion for a Supplemental Injunction," requesting that the Court permanently enjoin the defendants from manufacturing and selling jet inks numbered SK–2914 and SK–2916. Second, the defendants have filed a motion under Rule 65.1, Federal Rules of Civil Procedure, seeking $800,000.00 from Federal Insurance Company as damages allegedly incurred by the defendants due to the wrongful issuance of a temporary restraining order and preliminary injunction in the summer of 1983. The Court will grant the plaintiff's request for the supplemental injunction and will hold defendants' Rule 65.1 motion in abeyance pending an evidentiary hearing on that matter. In addition, the Court will lift the stay of discovery in Case Number 84-C-454.

The plaintiff's motion for a supplemental injunction arises out of an *ex parte* temporary restraining order issued by the Court on July 26, 1983, and a preliminary injunction issued on August 16, 1983. The restraining order enjoined the defendants from selling

> jet inks of any type, including defendants' SK–2914 and SK–2916 jet inks, to any of plaintiff's customers, previously serviced by Mansukhani when he was employed by plaintiff or its predecessors, including the customers Anheuser-Busch Company and Beverage Products, Inc.

Order of July 26, 1983. The preliminary injunction enjoined the defendants from selling jet inks numbered SK–2914 and SK–2916, and was coupled with a permanent injunction which enjoined the defendants

> from selling those commercial jet inks developed while defendant Mansukhani was employed by plaintiff's predecessor to the companies or individuals for whom those inks were specifically developed, or to any other companies or individuals. The set of inks so enjoined from sale by defendants includes but is not limited to those numbered R–453, P–473, and BK–493.

Order of August 16, 1983, at 6. As security for the restraining order and preliminary injunction, the plaintiff posted two bonds totalling $800,000.00, for which Federal Insurance Company was the surety.

The defendants successfully appealed the orders granting the TRO and the preliminary injunction, and the matter was remanded to this Court for further proceedings. *American Can Company v. Mansukhani*, 742 F.2d 314, 333–334 (7th Cir. 1984). The Court of Appeals reversed the temporary restraining order because it found no valid reason for the issuance of *ex parte* relief and because it believed that the procedural requirements of Rule 65(b), Federal Rules of Civil Procedure, had not been complied with. *Id.* at 321. The Court of Appeals reversed the preliminary injunction order because this Court had applied the functional or practical similarity standard in comparing plaintiff's protected trade secrets with defendants' ink formulas. That standard was applied for the purpose of determining plaintiff's likelihood of success on the merits. The Court of Appeals stated that the standard applied was incorrect because it expanded the original, narrow limits placed on the plaintiff's trade secrets by prohibiting the manufacture and sale of jet inks that were "compositionally similar" to the plaintiff's trade secrets instead of those that were "substantially derived" from the protected formulas. *Id.* at 326–327. The Court of Appeals also held that the use of the improper standard resulted in the issuance of a preliminary injunction which was too vague,

and thus not in compliance with Rule 65(d). *Id.* at 326.

The Court of Appeals never addressed the merits of this case, such as whether defendants' inks SK–2914 and SK–2916 violated plaintiff's trade secrets. Nor did the Court of Appeals decide that injunctive relief could not have been obtained by the plaintiff; in fact, the Court specifically stated that it was not deciding "that the district court could never have enjoined defendants from producing and selling the inks challenged here." *Id.* at 331. At the conclusion of its decision, the Court of Appeals ordered that the case be remanded to this Court for further proceedings, and that "any injunctive relief should be consistent with this opinion." *Id.* at 334.

A problem which has recurred throughout the unfortunate history of this case has been the difficulty of fashioning injunctions which protect the plaintiff's trade secrets without precluding the defendants from using their own expertise in combination with public information to produce new jet inks. While the need for requiring specific, detailed injunctions is not in doubt, it is equally clear that semantic differences can serve as grist for sophistic arguments that nothing but an injunction containing one or more particular terms will suffice as notice to a party of what he is constrained by law from doing. The chimerical nature of such an argument is particularly apparent in this case where the defendants surely know, in their own minds, whether they are developing new formulas or using the plaintiff's trade secrets.

Presently, however, the Court is not being asked to enjoin any present or prospective conduct other than the defendants' production and sale of jet inks numbered SK–2914 and SK–2916. In order to do so, the Court must find that these inks are substantially derived from plaintiff's protected trade secrets. To that effect, the Court has requested and received further briefing from the parties on the question of derivation.

Based upon these briefs and the exhibits attached to them, as well as all of the other relevant documents on file in this case, the Court is convinced and hereby finds that the defendants' jet inks numbered SK–2914 and SK–2916 were *substantially derived* from plaintiff's protected trade formulas. In reaching this decision, the Court was particularly impressed by (1) the fact that the defendants were able to "develop" their inks in a few hours, as opposed to the years it took the plaintiff to research and test its formulas; (2) the testimony of plaintiff's expert David Fell with respect to his analysis of defendants' and plaintiff's inks; (3) a comparison of the formulas and infrared spectra of plaintiff's and defendants' inks; and (4) plaintiff's Exhibit 32, which shows in defendant Mansukhani's own handwriting how he derived the formula for SK–2914 from plaintiff's protected formula P–473. Based on this evidence, as well as other testimony heard and exhibits reviewed by the Court throughout the lengthy history of this case, the Court is convinced beyond a doubt that defendants' jet inks numbered SK–2914 and SK–2916 were not the product of their own innovation, but were instead substantially derived from plaintiff's trade secrets.

Accordingly, the Court hereby permanently enjoins the defendants from producing and/or selling their jet inks numbered SK–2914 and SK–2916.

The Court will conduct a brief scheduling conference at *9:30 a.m.* on *Tuesday, October 1, 1985*, in Room 390 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin, for the purpose of setting discovery deadlines and determining a date for a hearing on defendants' Rule 65.1 motion.

In addition, since the only matter left pending in Case Number 81–C–1372 is the Rule 65.1 motion, the Court hereby lifts the stay of discovery it had imposed in Case Number 84–C–454. The scheduling conference referred to above will also serve as an opportunity to establish deadlines in that case.